THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROMEDEV LLC dba RELIEF FACTOR,

Plaintiff,

v.

ROBY WILSON (individual) and MAXXIMEDIA ADVERTISING CO; and DOES 1 through 25,

Defendant.

No. 2:22-cv-01063-JLR

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [~~PROPOSED~~] ORDER** **JLR**

**NOTE ON MOTION CALENDAR: FEBURARY 16, 2023**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the

application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B. ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. Custodians. The five custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers, databases), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). This list does not need to include the data sources and ESI set forth in Section (D)(3) below.

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The Court presumes that the use of search terms and queries, file type and date restrictions, and technology-assisted review will be reasonably necessary to locate or filter ESI likely to contain discoverable information. The parties shall timely confer to

attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a. Prior to running searches:

i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. If search terms were not used, a party shall disclose the search methodology used to locate ESI likely to contain discoverable information. The producing party may provide unique hit counts for each search query.

ii. The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 400 unique documents, excluding families is presumed to be overbroad.

b. After production: Within a reasonable time after the receiving party has received a production of documents responsive to a request, the receiving party may request no more than 10 additional search terms or queries. The immediately preceding section (Section C(2)(a)(iii)) applies.

3. Format.

a. ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. Such files should include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "Document Produced in Native Format" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The filename field produced in the production load file that reflects the original metadata should maintain the original file name.

c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

Parent-child relationships (the association between emails and attachments) will be preserved, and attachments to e-mails will not be eliminated from the parent e-mail. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata. Attachments shall be processed as though they were separate documents. If a party converts paper documents into electronic format, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. Likewise, separate documents scanned prior to production must be scanned and produced as separate PDFs corresponding to the original document's unitization.

f. To the extent practicable, the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

g. All productions should include a load file for Relativity with DAT and Opticon files that include the following metadata fields:

| **Field** | **Description/Example** |
|---|---|
| BegBates | ABC000001 |
| EndBates | ABC000002 |
| BegAttach | ABC000001 |
| EndAttach | ABC000004 |
| Custodian | Last Name, First Name |
| From | Address(es) of sender |
| To | Address(es) of recipients |
| CC | Address(es) of copied recipients |
| BCC | Address(es) of blind copied recipients |

| Subject-Email | Subject line of the email |
|---|---|
| FileName | Name of the original native file, including extension |
| DateSent | Date the email was sent |
| TimeSent | Time the email was sent |
| DateReceived | Date the email was received |
| TimeReceived | Time the email was received |
| TimeZone Processed | The time zone in which the emails were standardized during conversion |
| FileExtension | The file type extension representing the Email or native file document |
| Author | Author of the document |
| DateCreated | Date the document was created |
| TimeCreated | Time the document was created |
| DateLastModified | Date the document was last modified |
| TimeLastModified | Time the document was last modified |
| DateLastAccessed | Date the document was last accessed |
| TimeLastAccessed | Time the document was last accessed |
| PageCount | Number of page sin document/file |
| InternalFilePath | Original location of email including original file name |
| MessageID (INTMSGID) | Unique Message ID |
| MD5Hash | MD5 Hash value of the document |
| TextPath | Path to extracted text file associated with the document |
| NativeLink/FilePath | Path to the native file (if applicable) |
| Duplicate Custodians | Duplicate custodian information |

4. De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process should be tracked in a duplicate/other custodian field in the database load file.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. If responsive, any less inclusive copies of email threads that contain attachments must be produced with all attachments in addition to the most inclusive copy of that email thread. Upon reasonable request, the producing party will produce a less inclusive copy.

7. Hard-Copy Documents. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

The parties will confer regarding the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days before

the deadline for filing motions related to discovery unless an earlier deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

6. "Clawback" of Documents. Any Party that inadvertently discloses or produces a document or ESI that it considers privileged or otherwise protected from discovery will give written notice to the receiving party, identifying the document or ESI in question, the asserted privilege or protection, and the grounds therefor. Upon receipt of notice of the assertion of privilege or protection over produced documents or ESI, the receiving party will:

a. to whatever extent it contests the assertion of privilege or protection, promptly so notify the producing party, and maintain the contested documents and ESI in confidence pending resolution of the contest by the parties or the Court; and

b. to whatever extent the receiving party does not contest the assertion of privilege or protection, promptly certify in writing to the producing party that it has returned or destroyed the applicable document(s) and/or ESI, and has made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally reasonable diligence will not include disaster recovery media).

**F. Third-Party ESI Discovery**

1. A party that issues a non-party subpoena (the "Issuing Party") will include a copy of this Stipulated Order with the subpoena, and will request that non-parties produce documents in accordance with the specifications set forth herein. Non-parties may assert any objections they maintain to the terms of this Order and the Court will separately rule on those objections, if any.

2. The Issuing Party will produce any documents obtained under a subpoena to all other parties. Any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other parties.

3. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other parties.

4. The parties may decide to meet and confer regarding cost sharing arrangements for third party discovery but are under no obligation to do so.

**G. Modification**

Each of the parties reserve the right to seek modification of this order if it is deemed necessary.

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: February 17, 2023.

The Honorable James L. Robart
UNITED STATES DISTRICT JUDGE

*PRESENTED BY:*

DLA PIPER LLP (US)

*s/ Virginia Weeks*
Virginia Weeks, WSBA No. 55007
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029
Telephone: 206.839.4868
E-mail: virginia.weeks@us.dlapiper.com

AND

Michael Garfinkel (Bar No. 156010)
(*pro hac vice*)
Kristina Fernandez Mabrie (SBN 318315)
(*pro hac vice*)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067-4704
Tel: (310) 595-3000
Fax: (310) 595-3300
E-mail:
kristina.fernandezmabrie@dlapiper.com
michael.garfinkel@us.dlapiper.com

*Attorneys for Plaintiff Promedev LLC dba Relief Factor*

KLINEDINST PC

*s/ Gregor A. Hensrude (with approval)*
Gregor A. Hensrude, WSBA No. 45918
Sasha J. Glenn, WSBA No. 54422
701 Fifth Avenue, Suite 4150
Seattle, WA 98104-7091
Telephone: 206.682.7701
E-mail: GHensrude@Klinedinstlaw.com
E-mail: SGlenn@KlinedinstLaw.com

*Attorneys for Defendants Imagipix Corporation, MaXXiMedia Advertising Co, and Roby Wilson*