UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROMEDEV, LLC,

                 Plaintiff,

     v.

ROBY WILSON, et al.,

                 Defendants.

CASE NO. C22-1063JLR

ORDER

## I.  INTRODUCTION

Before the court is Plaintiff Promedev, LLC's ("Promedev") motion to dismiss several of Defendant MaXXiMedia Advertising Co.'s ("MaXXiMedia") amended counterclaims and to strike certain allegations in MaXXiMedia's amended counterclaims. (Mot. (Dkt. # 26); Reply (Dkt. # 30).)  MaXXiMedia opposes the motion.  (Resp. (Dkt. # 29).)  The parties also filed supplemental briefing in response to the court's February 9, 2023 order.  (2/9/23 Min. Order (Dkt. # 33); Supp. Resp. (Dkt. # 34); Supp. Reply (Dkt. # 39).)  The court has reviewed the parties' submissions, the balance of the record, and

1 relevant law.  Being fully advised,[1] the court GRANTS in part and DENIES in part

2 Promedev's motion to dismiss and DENIES Promedev's motion to strike.

3 ## II.    BACKGROUND

4        This case arises out of an agency relationship between the parties in which

5 Defendants Roby Wilson and MaXXiMedia managed the purchase, production, and

6 placement of television advertising for Plaintiff Promedev's nutritional supplement,

7 "Relief Factor."  (*See* Compl. (Dkt. # 1) ¶¶ 27-31, Ex. A (the "Agreement"); Am.

8 Counterclaim (Dkt. # 25) ¶¶ 2-3.)  Peter and Seth Talbott, a father and son who are

9 cofounders and owners of Promedev, hired MaXXiMedia in 2018 to act as Promedev's

10 advertising agent for the Relief Factor product.  (Am. Counterclaim ¶ 3.)

11        MaXXiMedia eventually learned that Promedev had a third owner, Dr. Jerry

12 Mixon, who MaXXiMedia alleges formulated the Relief Factor product and was the

13 controlling owner of Promedev.  (*Id.* ¶ 9.)  MaXXiMedia further alleges that the Talbotts

14 and Promedev concealed these facts, as well as Dr. Mixon's "history of complaints and

15 sanctions before various medical boards, and a litigation history of alleged fraud."  (*Id.*)

16 MaXXiMedia does not, however, allege that Promedev denied Dr. Mixon's involvement.

17 (*See generally id.*)  At all times relevant to this case, Dr. Mixon's ownership of the

18 company was publicly available in corporate filings with the Washington Secretary of

19

20

21

22

---

[1] MaXXiMedia requests oral argument (*see* docket entry 29) but does not include its request in the caption of its pleading (*see* Resp. at 1), as required by this court's local rules.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Promedev does not request oral argument.  (*See* Mot. at 1.)  The court has determined that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

State.  (*See* Decl. of Kristina Fernandez Mabrie (Dkt. # 27) ¶¶ 2-7, Exs. 1-6 ("Promedev Corporate Filings") (showing that Dr. Mixon, Seth Talbott, and Peter Talbott were each registered members of Promedev, LLC from 2016-2021).[2])

Under the parties' arrangement, MaXXiMedia used its existing relationships with national television networks to negotiate advertising rates and placements for Promedev in exchange for a 15% agency fee.  (*Id*. ¶¶ 2, 5.)  MaXXiMedia also began producing the advertising content for Promedev.  (*Id*. ¶¶ 6-7.)  The parties operated under a verbal agreement from the commencement of the relationship in 2018 until July 2020, when the parties negotiated and executed the Agreement.  (*See* Compl. ¶¶ 15-16; Ans. (Dkt. # 18) ¶ 15; Am. Counterclaim ¶¶ 5, 13.)

Under the written Agreement, MaXXiMedia would receive an agency commission of six percent of monthly gross television media expenditures, not to exceed $50,000 or fall below $30,000.  (Agreement § 4.)  In exchange, MaXXiMedia would continue to negotiate advertising rates and placements directly with television networks and then submit invoices to Promedev for the purchases.  (*Id*. §§ 1,5.)  The Agreement's confidentiality provision prohibits each party from using for its own benefit or disclosing to third parties any confidential business information, including "work product."  (*Id*.

---

[2] The court takes judicial notice of the Promedev Corporate Filings.  *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."); *see also Locals 302 & 612 of Int'l Union of Operating Eng'rs Constr. Health & Sec. Fund v. AEI Williams Grp., Co*., No. C19-0616JLR, 2020 WL 569828, at *2 n.2 (W.D. Wash. Feb. 5, 2020) (taking judicial notice of corporate filings with the Washington Secretary of State).

§ 7.)  The Agreement defines "work product" as "Media buying services, work or

materials . . . created by [MaXXiMedia]" and provides that such "work product"

"remains the sole property of" MaXXiMedia.  (*Id.* § 8 (providing further that Promedev

"is leasing the use of the 'Work Product'").)  Finally, the Agreement provides that

"[u]pon payment in full to [MaXXiMedia], [Promedev] shall have full rights and

ownership of any 'creative product.'"  (*Id.*)  The Agreement does not define "creative

product."  (*See generally id.*)  The Agreement grants either party the right to terminate

the Agreement for any reason upon 60 days' written notice to the other party, and

provides that upon termination, Promedev "shall promptly pay all sums owed to

[MaXXiMedia] to and including the effective date of termination, including any future

non-cancelable commitments after the termination date" (the "Termination Clause").  (*Id.*

§ 13.)

On July 1, 2022, Promedev communicated its intent to terminate the Agreement,

pursuant to the Termination Clause.  (Compl. ¶ 34, Ex. B ("Termination Letter"); Am.

Counterclaim ¶ 28.)  Promedev indicated that termination would be effective August 31,

2022, and sought confirmation of Promedev's "rights and ownership of any 'creative

product' created by [MaXXiMedia]."  (Termination Letter.)  Promedev also informed

MaXXiMedia that for the duration of the parties' relationship, it would continue to pay

MaXXiMedia's commissions per the terms of the Agreement, but would pay the

television networks directly, rather than through MaXXiMedia.  (Am. Counterclaim

¶¶ 24, 28; Compl. ¶ 35.)  In response, MaXXiMedia notified Promedev that it considered

Promedev's intention to pay the networks directly an anticipatory breach of the

1    Agreement.  (Compl. ¶ 37; Am. Counterclaim ¶ 24.)  MaXXiMedia subsequently

2    submitted invoices to Promedev on July 15, 2022, for "a buyout of the creative product."

3    (Am. Counterclaim ¶ 28; Compl. ¶ 48, Ex. C ("Invoices"); *see also* Ans. ¶ 48 (not

4    disputing the authenticity of Invoices).)

5        In discussions surrounding the termination of the Agreement, MaXXiMedia

6    indicated that it had registered copyrights for each of the commercials it produced for

7    Promedev while the Agreement was in effect between July 2020 and August 31, 2022.

8    (Compl. ¶ 51; *see also* Am. Counterclaim ¶ 52 (describing registered copyrights for eight

9    commercials).)  MaXXiMedia does not allege that it registered copyrights for any other

10   commercials.  (*See generally* Am. Counterclaim.)

11       Thereafter, Promedev initiated the instant action, asserting various contract claims

12   against MaXXiMedia.  (*See generally* Compl.)  MaXXiMedia then asserted multiple

13   counterclaims against Promedev, including, in relevant part:  copyright infringement;

14   misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act

15   ("DTSA") and the Washington Uniform Trade Secrets Act ("WUTSA"); violation of the

16   Washington Consumer Protection Act ("WCPA"); and fraudulent inducement and

17   fraudulent misrepresentation.  (Am. Counterclaim ¶¶ 30-90.)  Promedev now moves to

18   dismiss MaXXiMedia's fourth, fifth, and sixth amended counterclaims and to strike

19   certain allegations in support of MaXXiMedia's third amended counterclaim for

20   copyright infringement as well as its demand for disgorgement of profits.  (*See* Mot. at

21   16.)

22

1

## III.   ANALYSIS

2       The court begins by reviewing the legal standard for a motion to dismiss and

3   analyzing Promedev's motion to dismiss MaXXiMedia's fourth, fifth, and sixth amended

4   counterclaims.  The court then reviews the legal standard for a motion to strike and

5   addresses Promedev's motion to strike.

6   **A.   Legal Standard for a Motion to Dismiss**

7       Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

8   or counterclaim "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ.

9   P. 12(b)(6).  Under this standard, the court construes the counterclaim in the light most

10  favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,

11  416 F.3d 940, 946 (9th Cir. 2005), and asks whether the counterclaim contains "sufficient

12  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

14  544, 570 (2007)).  The court need not, however, "accept as true allegations that contradict

15  matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State*

16  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Nor is the court required to accept as true

17  legal conclusions or "formulaic recitation[s] of the legal elements of a cause of action."

18  *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012).  "A claim has facial

19  plausibility when the plaintiff pleads factual content that allows the court to draw the

20  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

21  U.S. at 678.

22

MaXXiMedia's amended counterclaims for violation of the WCPA, fraudulent inducement, and fraudulent misrepresentation are subject to the heightened pleading standards of Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also REX – Real Estate Exch, Inc. v. Zillow Inc.*, C21-0312TSZ, 2021 WL 3930694, at *7 (W.D. Wash. Sept. 2, 2021) (applying Rule 9(b)'s heightened pleading standard to a WCPA claim alleging deceptive practices).  Rule 9(b)'s standard is relaxed, but not eliminated, for claims of fraud by omission.  *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)); *Asghari v. Volkswagon Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (requiring that "a plaintiff pleading fraudulent omission or concealment must still plead the claim with particularity").

**B.      Misappropriation of Trade Secrets in Violation of the DTSA and WUTSA**

"A claim under the WUTSA requires a plaintiff to plead (1) the existence of a protectable trade secret, and (2) facts constituting misappropriation."  *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1336 (W.D. Wash. 2021).  Claims for misappropriation under the federal DTSA "are substantially similar."  *Id*. (citing 18 U.S.C. § 1839).

A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

from its own disclosure or use" and "[i]s a subject of efforts that are reasonable under the circumstances to maintain its secrecy."  RCW 19.108.010(4)(a)-(b).  Although "[t]he definition of trade secret is broad," *see also NW Monitoring*, 534 F. Supp. 3d at 1336, it is not limitless, and the proponent must plausibly allege that "the information possess[es] some novelty" in order to warrant trade secret protection, *see Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 674 (Wash. 1987).  Information is "novel" if it is not "readily ascertainable from another source." *Belo Mgmt. Servs., Inc. v. ClickA Network*, 343 P.3d 370, 375 (Wash. Ct. App. 2014).  To determine whether information has "independent economic value," courts look to the effort and expense expended in developing the information. *Ed Nowogroski, Inc. v. Rucker*, 971 P.2d 936, 942 (Wash. 1999).

A claimant "seeking relief for trade secret misappropriation must identify the trade secret 'with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) (quoting *SMS Signature Cars v. Connects Marketing LLC*, SACV 12-1300 JVS (ANx), 2012 WL 12893935, at *2 (C.D. Cal. Oct. 29, 2012)).

The proponent of a claim for trade secret misappropriation must also establish that it made reasonable efforts to maintain the secrecy of its alleged trade secrets. *See* RCW 19.108.010(4).  "[R]easonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on need-to-know basis, and controlling plant access." *Machen, Inc. v. Aircraft Design, Inc*., 828 P.2d 73, 76-79 (Wash. Ct. App. 1992), *overruled on other grounds by Waterjet*

1  *Tech., Inc. v. Flow Int'l Corp.*, 996 P.2d 598 (Wash. 2000).  The proponent may

2  confidentially disclose a trade secret without losing trade secret protections.  *Boeing Co.*,

3  738 P.2d at 676; *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, 602. F. App'x 669, 672

4  (9th Cir. 2015) (concluding that evidence of confidentiality agreements that bound the

5  allegedly appropriating party were sufficient to show efforts to maintain secrecy).

6       Misappropriation is the unauthorized disclosure or use of a trade secret by a

7  person who knew his or her knowledge of the trade secret was "acquired under

8  circumstances giving rise to a duty to maintain its secrecy or limit its use." *Ed*

9  *Nowogroski*, 971 P.2d at 942 (citing RCW 19.108.010(2)); *see also A Place for Mom v.*

10  *Perkins*, 475 F. Supp. 3d 1217, 1225 (W.D. Wash. 2020) ("Thus, misappropriation

11  requires proof of improper acquisition, disclosure, or use.").

12       MaXXiMedia alleges Promedev misappropriated trade secrets by "disseminating

13  and/or causing proprietary rate and/or billing information to be communicated to

14  television networks" and communicating those rates "and/or contact lists" to "third

15  parties," in violation of the Agreement's confidentiality provision.  (Am. Counterclaim

16  ¶ 62.)  Promedev contends that MaXXiMedia has failed to (1) allege that its billing rates

17  or contact lists are sufficiently unique, innovative, or novel to merit trade secret

18  protection; (2) identify the alleged trade secrets with sufficient particularity; and

19  (3) demonstrate that Promedev improperly obtained the alleged trade secrets.  (Mot. at

20  16-21.)

21       The court concludes that MaXXiMedia has stated a plausible claim for

22  misappropriation of trade secrets.  First, MaXXiMedia has identified the information it

1    seeks to protect with sufficient particularity "to permit the defendant to ascertain at least

2    the boundaries within which the secret lies,'" *Bombardier,* 383 F. Supp. 3d at 1178, by

3    describing "rate and billing information related to its exclusive negotiations for ad

4    placement with television networks" as "trade secrets," (Am. Counterclaim ¶ 20).

5    Second, MaXXiMedia alleges that it has "spent years developing its reputation and

6    relationships with networks enabling it to develop and negotiate exclusive rate and billing

7    structure arrangements to implement for the economic benefit of its clients." (Am.

8    Counterclaim ¶ 63.) Thus, MaXXiMedia has alleged that the rate or billing information

9    has some independent economic value due to the time and expense incurred in creating it.

10   *Nowogroski, Inc.*, 971 P.2d at 942.[3]  Third, MaXXiMedia further alleges that the rate or

11   billing information was subject to confidentiality agreements (*see, e.g.*, Am.

12   Counterclaim ¶ 20 (quoting Agreement § 7 (confidentiality provision)); *id.* ¶¶ 64-65

13   (discussing application of the Agreement's confidentiality provision to the rate and

14   billing information)), thereby discharging its burdens to allege the information was not

15   readily ascertainable from another source, *Belo Mgmt.*, 343 P.3d at 375, and subject to

16   some effort to maintain secrecy, *Boeing Co.*, 738 P.2d at 676.

17   

18   ---

     [3] Promedev cites two Washington court of appeals opinions in support of its argument
     that negotiated rates and billing information, by their nature, are not trade secrets. (*See* Mot. at
19   19-20 (first citing *Robbins, Geller, Rudman & Dowd, LLP v. State*, 328 P.3d 905, 912 (Wash. Ct.
     App. 2014); and then citing *Belo Mgmt.* 343 P.3d at 375-76).) At this stage, Promedev's reliance
     on these cases is misplaced. In both cases, the appellate courts were engaged in *de novo* review
20   of injunctions, in which the burden imposed on a proponent of trade secret protections is much
     higher than the burden imposed at the motion to dismiss stage, where the proponent need only
21   plausibly allege the elements of its claim. *See Belo Mgmt.* 343 P.3d at 374; *Robbins*, 328 P.3d at
     910; *see also Tyler Pipe Indus., Inc. v. State, Dept. of Revenue*, 638 P.2d 1213, 1217 (Wash.
22   1982) (articulating the legal standard for injunctions under Washington law). Promedev may
     raise this argument at a later time, if at all.

1    Fourth and finally, MaXXiMedia alleges that Promedev used the rate or billing

2    information when it began to pay the television networks directly, contrary to the parties'

3    Agreement.  (Am. Counterclaim ¶ 24.)  This allegation is enough to plausibly allege

4    misappropriation or the "improper . . . use" of the pricing and billing information.  *A*

5    *Place for Mom*, 475 F. Supp. 3d at 1225.  Promedev's argument that it "rightfully"

6    obtained these alleged trade secrets is unavailing.  (*See* Mot. at 20-21.)  At this phase,

7    MaXXiMedia need only allege, as it has done, that Promedev acquired the rate or billing

8    information "under circumstances giving rise to a duty to maintain its secrecy or limit its

9    use." *Nowogroski, Inc.*, 971 P.2d at 942; *see also Boeing Co.*, 738 P.2d at 676 (a

10    company does not lose trade secret protections by confidentially disclosing them).  The

11    court concludes that MaXXiMedia has plausibly alleged a counterclaim for trade secret

12    misappropriation and DENIES Promedev's motion to dismiss this counterclaim.

13    **C.    Violation of the WCPA**

14    To recover under the WCPA, a plaintiff must show an "(1) unfair or deceptive act

15    or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to

16    plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge*

17    *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  A

18    defendant "need not affirmatively state an untrue fact to have committed a deceptive

19    practice" under the WCPA.  *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 19 (Wash. 2007).

20    Conduct is "deceptive" if it "has a capacity to deceive a substantial portion of the public,"

21    *Hangman Ridge*, 719 P.2d at 535, and "misleads or misrepresents something of material

22    importance," *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.*, 135 P.3d 499, 507

1    (Wash. Ct. App. 2006).  MaXXiMedia's amended counterclaim for violations of the

2    WCPA is subject to Rule 9(b)'s heightened pleading standard.  (*See supra* § III.A.)

3            MaXXiMedia alleges that Promedev's failure to disclose Dr. Mixon's ownership

4    was an unfair or deceptive practice that "deceived" MaXXiMedia and "consumers."

5    (Am. Counterclaim ¶¶ 77, 79.)  Specifically, MaXXiMedia alleges that Promedev

6    "misrepresented" its ownership by portraying the Talbotts "as the father-son team that

7    founded Relief Factor."  (Resp. at 11; Am. Counterclaim ¶¶ 75, 77 (alleging Promedev

8    "misrepresent[ed] the identity of ownership of Relief Factor").)  MaXXiMedia further

9    alleges that its own "goodwill has suffered and continues to suffer injury due to

10   Promedev's deceptive act and exposure to potential liability by way of participating in

11   production of the commercials."  (Am. Counterclaim ¶ 80.)  Promedev argues that

12   MaXXiMedia fails to allege an unfair or deceptive act or identify any injury to

13   MaXXiMedia itself or to the public interest, as a result of Promedev's failure to

14   affirmatively disclose Dr. Mixon's ownership.  (Mot. at 25-28.)  In particular, Promedev

15   notes that the fact of Dr. Mixon's ownership and his disciplinary records were, at all

16   times, publicly available.  (Mot. at 22 (citing Promedev Corporate Filings), 24 n.8; *see*

17   *generally* Resp. (not addressing public availability of allegedly concealed information);

18   *see also* Am. Counterclaim ¶ 11 (describing Dr. Mixon's disciplinary record before the

19   Washington Department of Health).)  MaXXiMedia does not allege that Promedev ever

20   denied Dr. Mixon's involvement or affirmatively represented that the Talbotts were

21   Promedev's only owners.  (*See generally* Am. Counterclaim.)

22

1   MaXXiMedia does not plausibly allege that Promedev's failure to affirmatively

2   disclose Dr. Mixon's ownership of Promedev was a "deceptive act" that "misrepresents

3   something of material importance." *Holiday Resort Cmty. Ass'n*, 135 P.3d at 507.

4   MaXXiMedia fails to identify any authority that recognizes as "of material importance"

5   the identities of the owners of a company selling a product, or as "deceptive" the

6   incomplete disclosure thereof.[4]  (*See generally* Resp.)  MaXXiMedia does not allege that

7   Promedev ever denied Dr. Mixon's ownership, nor does it dispute that Dr. Mixon's

8   ownership of Promedev was publicly available, both to MaXXiMedia itself and to any

9   consumer who cared to research the company before purchasing Relief Factor.  (Am.

10  Counterclaim ¶¶ 82-90; *see generally* Resp.; *see also* Promedev Corporate Filings.)

11      Because MaXXiMedia has failed to establish the first element of its WCPA

12  counterclaim, the court need not discuss the additional elements or Promedev's remaining

13  arguments.  The court GRANTS Promedev's motion to dismiss MaXXiMedia's WCPA

14  counterclaim.

15  **D.    Fraudulent Inducement and Fraudulent Misrepresentation**

16      Under Washington law, claims that sound in fraud consist of (1) a representation

17  of a fact; (2) the fact's falsity; (3) the fact's materiality; (4) the speaker's knowledge of

18  the statement's falsity; (5) the listener's lack of awareness that the statement is false;

19

20  _____

21  [4] Indeed, under MaXXiMedia's theory, any company that fails to list every single owner in an advertisement would be subject to liability under the WCPA.  (*See* Resp. at 15.)  MaXXiMedia offers no authority in support of this theory and the court declines to impose such an obligation—particularly where the allegedly withheld information was publicly available.  (*See* Promedev Corporate Filings.)

22

(6) the speaker's intent for the listener to act on the statement; (7) the listener's right to

rely on the truth of the statement; (8) the listener's actual reliance on the truth of the

statement; and (9) the listener's subsequent damage.  *See Sigman v. Stevens-Norton, Inc.*,

425 P.2d 891, 895 (Wash. 1967).  The absence of any of the nine elements is fatal to

recovery.  *Puget Sound Nat. Bank v. McMahon*, 330 P.2d 559, 561 (Wash. 1985).

Fraudulent misrepresentation by omission occurs when the parties' relationship imposes a

duty to disclose material facts; in such cases, failure to disclose with the intent to deceive

will amount to fraud.  *Oates v. Taylor*, 199 P.2d 924, 927 (Wash. 1948).  However, in

such circumstances, "[m]ere silence does not constitute fraud when it relates to

matters . . . discoverable by the exercise of ordinary diligence, or where the means of

information are as accessible to one party as to the other."  *Lincoln v. Keene*, 316 P.2d

899, 901 (Wash. 1957).  MaXXiMedia's amended counterclaims for fraudulent

inducement and fraudulent misrepresentation are subject to Rule 9(b)'s heightened

pleading standard.  (*See supra* § III.A.)

MaXXiMedia's amended counterclaims for fraudulent inducement and fraudulent

misrepresentation derive from the same facts as its counterclaim under the WCPA;

namely, that Promedev made material misrepresentations by identifying only the Talbotts

as owners and co-founders of Promedev and omitting Dr. Mixon's ownership, intending

for MaXXiMedia to rely on its representations.  (Am. Counterclaim ¶¶ 83-84.)

Promedev argues, in relevant part, that its representations regarding the Talbotts'

ownership were not false, that MaXXiMedia had access to the omitted information, and

that Promedev owed no duty of disclosure to MaXXiMedia.  (Mot. at 22-24; Reply at

7-9.)  MaXXiMedia responds that Promedev "had a duty to disclose all the information it knew would pose a conflict," and that the fact of Dr. Mixon's ownership is material to the parties' Agreement.  (Resp. at 14 (citing *U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 735 (9th Cir. 2019)).)

MaXXiMedia fails to plausibly allege that Promedev's representations that the Talbotts owned and founded Promedev were false.  Although MaXXiMedia alleges that the Talbotts "falsely represented" that they owned and founded Promedev (Am. Counterclaim ¶ 82), this allegation is contrary to publicly available facts (*see* Promedev Corporate Filings (listing the Talbotts as members of Promedev LLC)).  Although the court must generally accept as true the facts alleged in MaXXiMedia's amended counterclaim, *see Iqbal*, 556 U.S. at 678, the court need not accept allegations that contradict the Promedev Corporate Filings, which are subject to judicial notice, *Sprewell*, 266 F.3d at 988.  Moreover, MaXXiMedia does not allege that Promedev ever represented that the Talbotts were the only owners, to the exclusion of all others (*see generally* Am. Counterclaim; *see also supra* § III.C).[5]  Therefore, MaXXiMedia fails to plausibly allege that Promedev's statements regarding its ownership were false.

---

[5] *Chen v. State* is instructive.  937 P.2d 612, 615-16 (Wash. Ct. App. 1997).  There, the employer did not commit fraud by stating that the only other employee terminated during probation committed gross misconduct, but terminating the plaintiff for a different reason, because the employer's statement was not false.  *Id.* at 616 ("The statement was simply an explanation of the reason one psychiatrist had failed to pass probation.  It was not a representation that one can fail probation *only* by committing gross misconduct." (emphasis in original)).  Similarly, here, Promedev represented that the Talbotts were the owners and co-founders, but MaXXiMedia does not plausibly allege that Promedev asserted they were the *only* owners and co-founders.  (*See generally* Am. Counterclaim.)

1       MaXXiMedia's alternative argument—that Promedev had a duty to affirmatively

2   disclose Dr. Mixon's ownership, and that its failure to do so amounted to fraudulent

3   misrepresentation by omission—also fails.  (*See* Resp. at 14.)  As repeatedly noted,

4   Promedev's ownership was readily "discoverable by the exercise of ordinary diligence,"

5   and accessible to both parties.  *See Lincoln*, 316 P.2d at 901; (*see also* Promedev

6   Corporate Filings).  Accordingly, MaXXiMedia has not plausibly alleged that Promedev

7   fraudulently misrepresented its ownership by omitting material facts.  The court need not

8   reach Promedev's additional arguments.

9       The court GRANTS Promedev's motion to dismiss MaXXiMedia's amended

10  counterclaims for fraudulent inducement and fraudulent misrepresentation.

11  **E.    Leave to Amend**

12      On a Rule 12(b)(6) motion, "a district court should grant leave to amend . . . unless

13  it determines that the pleading could not possibly be cured by the allegation of other

14  facts."  *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.

15  1990).  The court, however, retains discretion to deny leave to amend, particularly where

16  the party has previously amended its claims.  *Sisseton-Wahpeton Sioux Tribe v. United

17  States*, 90 F.3d 351, 355 (9th Cir. 1996); *Turner v. Cnty. of Los Angeles*, 18 F. App'x

18  592, 597 (9th Cir. 2001) (concluding that the court did not abuse its discretion in denying

19  the second amended complaint with prejudice and without leave to amend where the

20  court had already allowed the plaintiff to amend its complaint); *Kendall v. Visa U.S.A.,

21  Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008) ("Appellants fail to state what additional facts

22

1    they would plead if given leave to amend . . . . Accordingly, amendment would be

2    futile.").

3            Promedev seeks dismissal of MaXXiMedia's fourth, fifth, and sixth amended

4    counterclaims with prejudice and without leave to amend.  (Mot at 30; Reply at 12.)

5    MaXXiMedia has already amended its counterclaims once (*see* Dkt.) and does not

6    request leave to amend here (*see generally* Resp.).  However, in an abundance of caution,

7    the court concludes that MaXXiMedia's amended counterclaim for violations of the

8    WCPA may possibly be cured by amendment and grants MaXXiMedia leave to amend

9    that counterclaim.  MaXXiMedia's amended counterclaim for fraudulent inducement and

10   fraudulent misrepresentation, by contrast, cannot be saved by amendment.  (*See supra*

11   § III. D.)  MaXXiMedia may file a second amended counterclaim as to its WCPA

12   counterclaim no later than **March 13, 2023.**  The court warns MaXXiMedia that failure

13   to timely amend its WCPA counterclaim that remedies the deficiencies identified herein

14   will result in the dismissal of that claim with prejudice.

15   **F.    Legal Standard for a Motion to Strike**

16           Under Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading

17   an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

18   Fed. R. Civ. P. 12(f).  A matter is immaterial if it "has no essential or important

19   relationship to the claim for relief or defenses pleaded."  *See Fantasy, Inc. v. Fogerty*,

20   984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)

21   (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*

22

§ 1382 (3d ed. 2022)).  A matter is impertinent if it does not pertain and is not necessary to the issues in the case.  *See id.*

      "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."  *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1032-33 (C.D. Cal. 2002).  A motion to strike will not be granted unless "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit."  *N.Y.C. Emps. Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (quoting *Rivers v. Cnty. of Marin*, No. C 05-4251, 2006 WL 581096, at *2 (N.D. Cal. 2006)).  "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike 'even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f).'"  *J & J Sports Prods., Inc. v. Luhn*, Civ. No. 2:10-3229 JAM-CKD, 2011 WL 5040709, at *2 (E.D. Cal. Oct. 24, 2011) (quoting *N.Y.C. Emps. Ret. Sys*, 667 F. Supp. 2d at 1128).  "A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  *Oilier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223-24 (S.D. Cal. 2010) (citing *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).

      "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion."  *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.  When considering a motion to strike, the court should view the pleading in the

1  light most favorable to the nonmoving party and "resolve[] any doubt as to the relevance

2  of the challenged allegations or sufficiency of a defense" in nonmoving party's favor.

3  *Alco*, 217 F. Supp. 2d at 1033.  "The burden of satisfying 'the stringent Rule 12(f)

4  standard' falls on the moving party."  *Mora-Villalpando v. U.S. Immigr. & Customs*

5  *Enf't*, No. C18-0655JLR, 2018 WL 3536754, at *4 (W.D. Wash. July 23, 2018) (quoting

6  *Ellison v. Autozone Inc.*, No. C06-07522MJJ, 2007 WL 2701923, at *2 (N.D. Cal. Sept.

7  13, 2007)).

8  **G.      Promedev's Motion to Strike**

9          Promedev asks the court to strike the following material from MaXXiMedia's

10  amended counterclaim: (1) certain allegations in support of MaXXiMedia's amended

11  counterclaim for copyright infringement as immaterial and impertinent, and

12  (2) MaXXiMedia's demand for disgorgement of profits as improper.  (Mot. at 28-32.)

13  The court reviews each argument below.

14          1.  Copyright Infringement Allegations

15          Promedev argues that some of the allegations supporting MaXXiMedia's

16  copyright infringement counterclaim are improper and impertinent because they refer to

17  "creative product" for which MaXXiMedia has not obtained copyright registrations.  (*Id*.

18  at 28-29; Reply at 11; *see also* Am. Counterclaim ¶ 52 (alleging MaXXiMedia registered

19  copyrights for commercials created only between July 2020 and August 31, 2022).)

20  Promedev argues that because ownership of a copyright registration is a threshold

21  requirement to an infringement suit, striking these allegations will "avoid the expenditure

22  of time and money that must arise from litigating spurious issues."  (Mot at 29 (quoting

1    *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)).)  MaXXiMedia

2    responds that its copyright infringement counterclaim for unregistered works may fit an

3    exception to the usual rule requiring registration as a precondition to suit for

4    infringement.  (Supp. Resp. at 4.)  Both parties mischaracterize the law, and the court

5    declines to adjudicate the merits of MaXXiMedia's amended counterclaim for copyright

6    infringement on a motion to strike.  *See Platte Anchor Bolt*, 352 F. Supp. 2d at 1057

7    (requiring denial "[i]f there is any doubt whether the portion to be stricken might bear on

8    an issue in the litigation").[6]

9           Promedev has failed to discharge its substantial burden of demonstrating that the

10   paragraphs at issue lack any "logical connection to the controversy" and will prejudice

11   Promedev.  *See N.Y.C. Emps. Ret. Sys.*, 667 F. Supp. 2d at 1128.  The factual content of

12   these paragraphs may be relevant to MaXXiMedia's amended counterclaim for copyright

13   infringement and should not be stricken.  *See id.*  Moreover, Promedev's prejudice

14   argument, premised entirely on the expenditure of resources in "litigating spurious

15   issues" (Mot at 29 (quoting *Sidney-Vinstein*, 697 F.2d at 885)), "is somewhat undermined

16   by litigating [a] motion[] to strike, despite their disfavored status, rather than advancing

17   the litigation," *Reiffer v. HGM Holdings LLC*, No. 1:18-CV-1058-LJO-BAM, 2019 WL

18   1455325, at *4 (E.D. Cal. Apr. 2, 2019); *see Harris v. Chipotle Mexican Grill, Inc.*, 303

19   F.R.D. 625, 628-29 (E.D. Cal. 2014) ("The court cannot conceive how these defenses

20

21          _____

            [6] The parties may raise their arguments regarding the availability of copyright
22   infringement actions for unregistered works at a later time.  At that time, the court expects both
     parties to accurately represent the authorities they cite.

will 'cost both the parties and the [c]ourt unnecessary time and resources.'  In fact, it is more likely the parties and the court have already needlessly expended more resources on this motion." (citation omitted)).  The court DENIES MaXXiMedia's motion to strike paragraphs 42-48 and 55-61 of MaXXiMedia's amended counterclaim for copyright infringement.

       2.  <u>Request for Disgorgement of Profits</u>

      MaXXiMedia seeks disgorgement of Promedev's "ill-gotten gains," from the sale of Relief Factor "from 2018 to the present."  (Am. Counterclaim at 19.)  Promedev urges the court to strike this paragraph, asserting that MaXXiMedia has not alleged any claims that would entitle it to the disgorgement of profits (Mot. at 30; Reply at 11-12), and again arguing that striking this paragraph will allow Promedev to avoid litigating "spurious issues."  (Mot. at 30.)  In response, MaXXiMedia asserts that disgorgement of profits is an available remedy for its amended counterclaims for copyright infringement and misappropriation of trade secrets.  (Resp. at 18 (first citing *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1323 (Fed. Cir. 2018); and then citing *Harper & Row Publrs. v. Nation Enters.*, 471 U.S. 539, 567 (1985)).)

      Promedev again fails to discharge its burden under "the stringent Rule 12(f) standard," *Mora-Villalpando*, 2018 WL 3536754, at *4, because it has failed to demonstrate MaXXiMedia's demand for disgorgement of profits lacks any logical connection to this case or would prejudice Promedev, *see N.Y.C. Emps. Ret. Sys.*, 667 F. Supp. 2d at 1128.  As Promedev acknowledges in both its motion and reply brief, disgorgement of profits is an available remedy in actions for copyright infringement

1    where the copyright owner's loss of revenue is attributable to infringement.  (*See* Mot. at

2    30 (citing 17 U.S.C. § 501); Reply at 12 (discussing *Harper & Row*, 471 U.S. at 567).)

3    At this early phase of the litigation, there remains some uncertainty as to whether the

4    demand for disgorgement of profits "might bear on an issue in the litigation," and the

5    court must therefore deny the request for that reason alone.  *Platte Anchor Bolt*, 352 F.

6    Supp. 2d at 1057; *see also Alco*, 217 F. Supp. 2d at 1033.  The court DENIES

7    Promedev's motion to strike MaXXiMedia's demand for disgorgement of profits.

8                              **IV.    CONCLUSION**

9         For the foregoing reasons, the court GRANTS in part and DENIES in part

10   Promedev's motion (Dkt. # 26).  Specifically, the court:  (1) DENIES Promedev's motion

11   to dismiss MaXXiMedia's amended counterclaim for misappropriation of trade secrets;

12   (2) GRANTS Promedev's motion to dismiss MaXXiMedia's amended counterclaim for

13   violation of the WCPA and DISMISSES that counterclaim without prejudice and with

14   leave to amend; (3) GRANTS Promedev's motion to dismiss MaXXiMedia's amended

15   counterclaim for fraudulent inducement and fraudulent misrepresentation and

16   DISMISSES that counterclaim with prejudice and without leave to amend; and

17

18

19

20

21

22

1    (4) DENIES Promedev's motion to strike.  MaXXiMedia may file a second amended

2    counterclaim, if any, no later than **March 13, 2023**.

3         Dated this 2nd day of March, 2023.

4

5

6                                    JAMES L. ROBART
                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 23