UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROMEDEV, LLC,

                   Plaintiff,

    v.

ROBY WILSON, et al.,

                Defendants.

CASE NO. C22-1063JLR

ORDER

## I.  INTRODUCTION

Before the court are motions for summary judgment filed by (1) Defendants /
Counter-Claimants Roby Wilson, MaXXiMedia Advertising Co. ("MaXXiMedia"), and
Imagipix Corporation ("Imagipix") (collectively, "Defendants") (Def. Mot. (Dkt. # 56);
Def. Reply (Dkt. # 77)); and (2) Plaintiff / Counter-Defendant Promedev, LLC
("Promedev") (Pl. Mot. (Dkt. # 72); Pl. Reply (Dkt. # 84)).  Both motions are opposed.
(Pl. Resp. (Dkt. ## 62 (redacted), 67 (sealed)); Def. Resp. (Dkt. # 81).)  On March 26,
2024, the court issued an order to show cause why it should not dismiss Defendants'

1  counterclaim for copyright infringement (3/26/24 Order (Dkt. # 86)), and Defendants

2  timely responded the following day (OSC Resp. (Dkt. # 91)).  The court has considered

3  the parties' submissions, the relevant portions of the record, and the governing law.

4  Being fully advised,[1] the court GRANTS in part and DENIES in part Defendants' motion

5  for summary judgment and GRANTS in part and DENIES in part Promedev's motion for

6  summary judgment.

7                              **II.  BACKGROUND**

8        This case arises out of a collapsed business relationship between Promedev and

9  Defendants.  Promedev is a nutrition supplement company specializing in the sale of

10 "Relief Factor," which it describes as "a powerful 100% drug-free botanical and fish oil

11 research-based formula that was created to help support the body's inflammatory

12 response."  (Am. Compl. (Dkt. # 54) ¶ 11.)  Mr. Wilson works in the advertising industry

13 and, through his companies Imagipix and MaXXiMedia, offers filming, post-production,

14 and television ad placement services to his clients.  (Def. Mot. at 6.)  The parties'

15 relationship commenced in 2018 with a "hand-shake agreement," and MaXXiMedia

16 began producing commercials for Promedev's supplements and placing those

17 commercials on Fox News Channel ("Fox News") and Newsmax shortly thereafter.

18 (Am. Compl. ¶¶ 15-17.)

19 //

20

21        [1]  Defendants request oral argument regarding their motion (Def. Mot. at 1) but not
   Promedev's motion (*see* Def. Resp. at 1).  Promedev does not request oral argument.  (*See* Pl.
22 Mot. at 1; Pl. Resp. at 1.)  The court concludes that oral argument would not be helpful to its
   disposition of these motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1      Promedev's business grew, and by the latter half of 2020, it began to reconsider its

2 relationship with MaXXiMedia.  (*See id.* ¶ 19.)  On July 31, 2020, after several days of

3 negotiations (*see id.* ¶¶ 20-26), Promedev and MaXXiMedia executed a written contract,

4 drafted by MaXXiMedia, that would govern their relationship going forward (the

5 "Agreement").  (*See generally* 1/18/24 Wilson Decl. (Dkt. # 58) ¶ 8, Ex. A

6 ("Agreement").  *See* 2/5/24 Wagner Decl. (Dkt. # 65) ¶ 10.)  In relevant part, the

7 Agreement provides that:

8          (1) MaXXiMedia would "provide services necessary to purchase and place all media
              for [Promedev], specifically television" and would be "the exclusive provider for
9             television media placement for [Promedev]."  MaXXiMedia would also provide
              services to place advertisements in other media, as well as "[a]dditional services"
10            including, but not limited to, "research, market planning, public relations, web,
              digital, design and creative services" (collectively, the "Services") (Agreement
11            ¶ 1);

12         (2) Promedev would pay MaXXiMedia a "commission or fee of 6% of the gross
              television media spend on a monthly basis," with caps and/or additional payments
13            depending on billing amounts (*id.* ¶ 4);

14         (3) MaXXiMedia would charge Promedev for "additional products and/or
              services . . . which [were] not part of the Services covered by the terms of th[e]
15            Agreement" (*id.*);

16         (4) Promedev agreed to pay MaXXiMedia "all reasonable out-of-pocket
              miscellaneous expenses, i.e. spot distribution etc." (*id.*);
17
           (5) MaXXiMedia agreed to "invoice [Promedev] at the time of services rendered" and
18            "[a]dditional products and services, and allowable expenses" could be "invoiced at
              any time" (*id.* ¶ 5);
19
           (6) Promedev would make payments in a "timely fashion" (*id.*);
20
           (7) if Promedev failed to pay an invoice "within thirty days or due date,"
21            MaXXiMedia could "at its option . . . remove commercials from all media outlets"
              until Promedev made "payment in full" (*id.* ¶ 6);
22

(8) "[u]pon payment in full" to MaXXiMedia, Promedev would "have full rights and ownership of any 'creative product,'" but "[m]edia buying services, work or materials (the 'Work Product')" created by MaXXiMedia, "except as provided in th[e] Agreement," would "remain[] the sole property of [MaXXiMedia]" (*id.* ¶ 8);

(9) all "Work Product," including but not limited to "all rate and billing information," was to be kept "strictly confidential" and not to be disclosed "to any third party" (*id.* ¶ 7);

(10) "[a]ll 'Work Product' and 'Creative Product' [was] for the exclusive use of [Promedev] and [could] not be copied, divulged, disclosed, or sold to another party" (*id.* ¶ 8); and

(11) either party could terminate the Agreement "on sixty (60) days written notice to the other party" and, "[i]n the event of such termination," Promedev would "promptly pay all sums owed to [MaXXiMedia up] to and including the effective date of termination, including any future non-cancelable commitments after the termination date" (*id.* ¶ 13).

For the next two years, the parties appeared to have a functioning business relationship. Mr. Wilson and MaXXiMedia created advertisements and negotiated network rates for Promedev and, in return, Promedev "always timely paid" MaXXiMedia's monthly invoices. (*See* 2/5/24 Wagner Decl. ¶ 11.)

On July 1, 2022, however, Promedev notified MaXXiMedia of its intent to terminate the Agreement 60 days later on August 31, 2022 "pursuant to Section 13 of the Agreement." (*Id.* ¶ 13; 1/18/24 Wilson Decl. ¶ 16, Ex. B, at 7-18[2] ("Termination Letter").) Promedev attached to its notice a proposed termination agreement with the purpose of "confirming" Promedev's right to ownership of "creative product" and its remaining payment obligations. (Termination Letter at 10-18; *see also* Agreement ¶ 13.)

---

[2] The court cites to the page numbers in the CM/ECF header when referring to this exhibit.

ORDER - 4

1   At the end of its notice, Promedev wrote that Mr. Wilson should "not hesitate to contact

2   us if [he] ha[d] any questions." (Termination Letter at 9.)

3        Promedev's notice of termination triggered a flurry of correspondence from

4   MaXXiMedia, which swiftly lawyered up and took the offensive. On July 6, 2022,

5   counsel for Mr. Wilson, Tom Coleman, sent a "Notice of Breach of Contract" to

6   Promedev, in which it alleged that Promedev breached the Agreement "by reason of its

7   failure and refusal to make payments to MaXXiMedia" and asserted that Promedev was

8   "in default by failure to make payment when due" on July 1, 2022. (2/5/24 Wagner Decl.

9   ¶ 24, Ex. T ("7/6/22 Coleman Letter").) Mr. Coleman acknowledged, however, that "the

10  termination [was] not effective until August 31, 2022, pursuant to Section 13 of the

11  Agreement." (*Id.*) Two days later, Mr. Coleman sent another letter to Promedev titled

12  "Re: Contract Breach due to proposed 'Termination Agreement,'" asserting in relevant

13  part that (1) MaXXiMedia owned all "creative product" ("valued" at $1,380,000) and

14  "Work Product" ("valued" at $2,000,000); (2) Promedev owed MaXXiMedia

15  commissions for May 2022 through December 2022 and was in "default by failure to

16  make payment when due"; (3) MaXXiMedia could "remove" Promedev's advertisements

17  from the air "at any time" due to its failure to pay; and (4) Promedev could purchase a

18  "lifetime non-compete and non-disparagement agreement" for $5,000,000. (2/5/24

19  Rainwater Decl. (Dkt. # 66) ¶ 2, Ex. U at 1-4.) Then, on July 15, 2022, Mr. Wilson sent

20  Promedev three invoices: one for $1,380,000 for "copyrighted 'Creative Product'"; one

21  for $2,000,000 for other creative "Work Product"; and one for $587,087.78, which

22  included $127,087.78 for "[m]iscellaneous" expenses "that may be invoiced at any time,"

ORDER - 5

1   the earliest of which dated back more than four years to May 2018.  (2/5/24 Wagner

2   Decl. ¶ 18, Ex. N ("7/15/22 Invoices").)  Ten days later, on July 25, 2022, Mr. Coleman

3   sent Promedev's attorney an email responding to Promedev's "refus[al] to pay

4   immediately the $527,027.78 owed for commission and $1,380,000.00 for creative

5   product."  (*Id.* ¶ 19, Ex. O ("7/25/22 Email") at PROMEDEV0016364.)  In that email,

6   MaXXiMedia threatened that if Promedev did not pay these sums, MaXXiMedia would

7   "remove all commercials" and "assure" the "instant[] destr[uction]" of Promedev's

8   goodwill, "devastating depositions and testimonies," and "unwelcomed attention from

9   various Government agencies."  (*Id.*)  If Promedev "immediately" paid the money,

10  however, it could "avoid[] . . . all the possible scenarios above."  (*Id.*)

11         MaXXiMedia's hostile correspondence came as a surprise to Promedev.  (*See*

12  1/5/24 Wagner Decl. ¶ 13.)  Promedev had not yet paid MaXXiMedia's May invoice by

13  July 6, 2022, the date Mr. Coleman sent the "Notice of Breach of Contract" to Promedev.

14  MaXXiMedia, however, hadn't sent that invoice to Promedev until June 28, 2022, and

15  Promedev paid it on July 14, 2022.  (2/5/24 Wagner Decl. ¶¶ 13, 20.)  Promedev paid

16  MaXXiMedia's June invoice on July 26, 2022, and sent over $400,000 dollars in

17  additional payments in August and September 2022 to cover commissions owed for the

18  remainder of the year and most of Mr. Wilson's miscellaneous expenses.  (*Id.* ¶ 20; *see*

19  *also id.* ¶ 20, Ex. P ("Checks").)  Promedev did not pay any portion of the $1,380,000 or

20  $2,000,000 MaXXiMedia demanded for its creative product and work product, nor did

21  Promedev pay any portion of the $5,000,000 MaXXiMedia proposed as the price for a

22  //

non-compete and non-disparagement agreement.  (*See generally* Dkt.  *See* Pl. Resp. at 7

(noting that Promedev was "not interested in making the 'optional purchases'").)

Promedev began seeking new advertising agencies to partner with.  While

negotiating with one of those agencies, Eicoff, Promedev disclosed the rates Fox News

had charged Promedev—rates MaXXiMedia had negotiated on Promedev's behalf.  (*See*

2/5/24 Wagner Decl. ¶ 21, Ex. Q (Dkt. ## 65-17 (redacted), 68-2 (sealed)) ("Eicoff

Email") (email to Eicoff with attachments disclosing the Fox News rates).)  Promedev

did not, however, disclose any of MaXXiMedia's invoices to Eicoff.  (*See id.* ¶ 21.)

Promedev filed this lawsuit on July 29, 2022.  (*See generally* Compl. (Dkt. # 1).)

Promedev brings claims for (1) breach of contract; (2) breach of the implied covenant of

good faith and fair dealing; (3) civil coercion, extortion, and blackmail; and

(4) declaratory judgment.  (Am. Compl. at 22-26.)  Defendants bring counterclaims for

(1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing;

(3) copyright infringement; and (4) misappropriation of trade secrets under Washington's

Uniform Trade Secrets Act ("UTSA") and the federal Defend Trade Secrets Act

("DTSA").  (Counterclaims (Dkt. # 25) at 9-17.)[3]

Each side moves for summary judgment on the other's claims.  The court provides

the relevant summary judgment legal standard before considering the parties' motions.

//

//

---

[3] The court previously granted Promedev's motion to dismiss Defendants' counterclaims for violations of the Washington Consumer Protection Act, fraudulent inducement, and fraudulent representation.  (*See generally* 3/2/23 Order (Dkt. # 40).)

1

### III.  LEGAL STANDARD

2          Summary judgment is appropriate if the evidence viewed in the light most

3    favorable to the non-moving party shows "that there is no genuine dispute as to any

4    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

5    56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it

6    might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

7    (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a

8    reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*,

9    247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

10          The moving party bears the initial burden of showing there is no genuine dispute

11   of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

12   323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

13   show the absence of such a dispute in two ways:  (1) by producing evidence negating an

14   essential element of the nonmoving party's case, or (2) by showing that the nonmoving

15   party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

16   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

17   meets its burden of production, the burden then shifts to the nonmoving party to identify

18   specific facts from which a factfinder could reasonably find in the nonmoving party's

19   favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

20

### IV.  THE PARTIES' MOTIONS

21          Each side moves for summary judgment on the other's claims for breach of

22   contract and breach of the implied covenant of good faith and fair dealing.  Additionally,

1   Promedev seeks summary judgment on Defendants' claims for trade secret

2   misappropriation and copyright infringement, and Defendants seek summary judgment

3   on Promedev's claim for civil coercion, extortion, and blackmail.[4]   The court considers

4   these claims in turn.

5   **A.   Breach of Contract**

6     The parties agree the contract is governed by Washington law.  (*See* Def. Reply. at

7   9-10 (applying Washington law); Pl. Resp. at 10-12 (same).)  In Washington, a breach of

8   contract is actionable "only if the contract imposes a duty, the duty is breached, and the

9   breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of

10  Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995).  "Any failure to perform a

11  contractual duty," even if non-material, "constitutes a breach, and an injured party is

12  generally entitled to those damages necessary to put that party in the same economic

13  position it would have occupied had the breach not occurred."  *DC Farms, LLC v.

14  Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 555 (Wash. Ct. App. 2014).

15    "[S]ummary judgment on an issue of contract interpretation is proper where 'the

16  parties' written contract, viewed in light of the parties' other objective manifestations, has

17  only one reasonable meaning.'"  *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of

18

19    [4]  It is unclear whether Defendants seek summary judgment on Promedev's claim for
    declaratory judgment.  Defendants' discussion of Promedev's declaratory judgment claim is two
20  sentences long and describes the claim as "duplicitous and superfluous given MaXXiMedia's
    counterclaims."  (Def. Mot. at 18.)  Defendants state that "the Court need not issue a ruling on
21  Plaintiff's request for declaratory judgment" (*id.*), and Promedev "agrees that the Court should
    not issue a ruling on its declaratory judgment claim in response to Maxximedia's motion" (Pl.
22  Resp. at 24).  The court therefore does not consider Promedev's declaratory judgment claim in
    this order.

*Grays Harbor Cnty*, 266 P.3d 229, 235 (Wash. Ct. App. 2011) (quoting *Hall v. Custom Craft Fixtures, Inc.*, 937 P.2d 1143, 1137 (Wash. Ct. App. 1997)).  When interpreting contracts, Washington courts follow the "objective manifestation theory."  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005).  Under this approach, courts "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties."  *Id.*  Courts may "impute an intention corresponding to the reasonable meaning of the words used."  *Id.*  The subjective intent of the parties is therefore "irrelevant if the intent can be determined from the actual words used."  *Id.*  Such words are given their "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."  *Id.*  "Interpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective."  *Grey v. Leach*, 244 P.3d 970, 976 (Wash. Ct. App. 2010); *see also Riley v. Iron Gate Self Storage*, 395 P.3d 1059, 1065 (Wash. Ct. App. 2017) ("The contract is viewed as a whole, and particular language is interpreted in the context of other provisions.").

"Clear and unambiguous contracts are enforced as written."  *Radliff v. Schmidt*, 532 P.3d 622, 625 (Wash. Ct. App. 2023) (quoting *Grey*, 244 P.3d at 975).  "Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves."  *Condon v. Condon*, 298 P.3d 86, 92 (Wash. 2013).  "Language in a contract is ambiguous if it is susceptible to two different but reasonable interpretations or where separate contractual provisions

1   irreconcilably conflict." *Radliff*, 32 P.3d at 625.  "A contract provision is not ambiguous

2   merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett*

3   *Chevrolet, Inc*., 317 P.3d 1074, 1078 (Wash. Ct. App. 2014).  Moreover, "[a]mbiguities

4   are construed against the drafter." *Lamar Outdoor Advert. v. Harwood*, 254 P.3d 208,

5   213 (Wash. Ct. App. 2011).

6         Washington courts also follow the "context rule" that "extrinsic evidence relating

7   to the context in which a contract is made may be examined to determine the meaning of

8   specific words and terms" used in the contract.  *William G. Hulbert, Jr. & Clare*

9   *Mumford Hulbert Revocable Living Tr. v. Port of Everett*, 245 P.3d 779, 784 (Wash. Ct.

10  App. 2011).  "Extrinsic evidence includes the subject matter and objective of the contract,

11  all the circumstances surrounding the making of the contract, the subsequent acts and

12  conduct of the parties, and the reasonableness of the respective interpretations urged by

13  the parties." *Id.*  "Extrinsic evidence may not, however, be used to show an intention

14  independent of the instrument or to vary, contradict or modify the written word." *Id.*

15  (internal quotations omitted) (quoting *Hearst*, 115 P.3d at 267).

16        Here, neither side moves for summary judgment on its own breach of contract

17  claim.  Instead, Defendants move for summary judgment on Promedev's claim, and

18  Promedev moves for summary judgment on Defendants' claim.  Defendants argue that

19  summary judgment on their claim is improper because a genuine dispute of material fact

20  exists as to whether Promedev breached the Agreement by (a) "refus[ing] to timely pay

21  amounts that were past due for media placement services," (b) "refus[ing] to pay amounts

22  owed for future media placement services," (c) "refus[ing] to pay for additional services

under the contract, specifically MaXXiMedia's creative services," (d) "refus[ing] to pay

MaXXiMedia's costs incurred under the contract," (e) making continued use of

MaXXiMedia's "Creative Product" "[d]espite failing to pay monies owed," (f) making

continued use of MaXXiMedia's "Work Product" "[d]espite failing to pay monies owed,"

and (g) "distribut[ing] MaXXiMedia Work Product to third parties."  (Def. Resp. at 1-2.)[5]

Promedev argues that summary judgment on its claim is improper because a genuine

dispute of material fact exists as to whether MaXXiMedia breached the Agreement by

"making improper demands for payment and threats if Promedev failed to pay such

demands," and "refusing to recognize [Promedev's] ownership" "of all creative product."

(Pl. Resp. at 2.)  The court considers the parties' motions in turn.

　　1.　　Promedev's Motion

　　　　a.　　*"Timely" Payment of Amounts Owed for Ad Placement Services*

　　Promedev argues that there is no genuine dispute that it "timely" paid all

commissions due under the Agreement.  (*Id.* at 15.)[6]  In support of its argument,

Promedev provides evidence that it paid all of MaXXiMedia's invoices for commission

---

[5] Defendants do not attempt to raise a genuine dispute as to whether Promedev "violat[ed] the mutual-noncompete and exclusivity provisions by and through its actions negotiating with media networks and third parties for the purchase of ad placement." (Counterclaims ¶ 31.)  Promedev moves for summary judgment on this issue (*see* Pl. Mot. at 23), but Defendants do not respond (*see* Def. Resp. at 1-2 (listing the ways Promedev breached the Agreement, but not mentioning any violation mutual-noncompete and exclusivity provisions)). MaXXiMedia also admits that it placed the relevant ads at issue.  (*See* Def. Resp. at 11.)  The court therefore grants this portion of Promedev's motion for summary judgment.

[6] The court frequently cites Promedev's opposition to Defendants' motion for summary judgment in this section because Promedev's motion refers the court back to its reasoning therein.  (*See, e.g.*, Pl. Mot. at 23 ("Maxximedia's claim . . . that Promedev failed to pay all commissions is addressed in Promedev's Opposition . . . .").)

1   payments within thirty days of the invoice date.  (*See* 2/5/24 Wagner Decl. ¶ 20; Checks.)

2   According to MaXXiMedia, the evidence shows that Promedev "refused to timely pay

3   amounts that were past due for media placement services" because it "had not yet paid at

4   least $100,000 in monies owed for MaXXiMedia's services in May and June at the time

5   Promedev elected to terminate the Agreement" on July 1, 2022, and did not satisfy the

6   remainder of its payment obligations until "well after filing suit against MaXXiMedia."

7   (Def. Resp. at 1, 13-14.)  The court agrees that Promedev timely paid MaXXiMedia's

8   commissions.

9          The Agreement requires payment in a "timely fashion" and provides that "[a]ll

10  invoices not paid within thirty days or due date are considered overdue."  (Agreement

11  ¶¶ 5-6.)  MaXXiMedia does not dispute that Promedev paid all invoices within thirty

12  days.  (*See generally* Def. Resp.)  Rather, MaXXiMedia argues that Promedev failed to

13  make timely payments because it did not pay all invoices before providing its notice of

14  intent to terminate the Agreement or filing this lawsuit.  (*See id.* at 13-14.)  Defendants'

15  interpretation of the Agreement is unreasonable.  Nothing in the Agreement requires

16  Promedev to pay all outstanding invoices before providing notice of intent to terminate.

17  To the contrary, paragraph 13, "Termination," contemplates payment after providing

18  such notice.  (*See* Agreement ¶ 13 ("In the event of such termination, the Client shall

19  promptly pay all sums owed to the Agency [up] to and including the effective date of

20  termination . . . .").)  Likewise, although the Agreement contemplates "legal action . . .

21  taken to enforce the terms of this Agreement" (*id.* ¶ 14), no provision requires Promedev

22  to pay all outstanding or future invoices before suing to enforce its rights (*see generally*

1   *id.*).  Instead, the Agreement unambiguously provides Promedev a "thirty day[]" window

2   to make payments before they become "overdue."  (Agreement ¶ 6.)  Defendants'

3   attempts to shorten that window are not rooted in the contract language and contradict the

4   Agreement's express terms.  The court therefore concludes as a matter of law that

5   Promedev timely paid all of MaXXiMedia's commission invoices and grants this portion

6   of Promedev's motion.

7                          b.      *Payment for Future Media Placement Services*

8               Promedev argues that there is no genuine dispute that it timely paid all

9   commissions owed for future media placement services because it made "early"

10  payments of all post-Agreement invoices.  (Pl. Reply at 3 (listing payment dates).)  The

11  evidence establishes that Promedev paid MaXXiMedia's commissions for August

12  through December 2022 on August 29, 2022, before the effective date of termination.

13  (*See* 2/5/24 Wagner Decl. ¶ 20; Checks; Agreement ¶ 13.)  Defendants do not argue that

14  Promedev failed to make "prompt" payments after providing notice of termination.  (*See*

15  *generally* Counterclaims; Def. Resp.  *See* Agreement ¶ 13 (requiring Promedev to

16  "promptly pay all sums owed" in the event of termination).)  Instead, Defendants argue

17  that the evidence establishes that Promedev "refused to pay amounts owed" until "after

18  this filing."  (Def. Resp. at 1.)  The court again agrees with Promedev, concluding that

19  Promedev timely paid MaXXiMedia's commissions for future media placement services.

20              There is no language in the Agreement that required Promedev to pay sums not yet

21  owed before filing suit to enforce its rights.  *See supra* IV.A.1.a.  Promedev paid

22  MaXXiMedia's commissions for August through December 2022 in full before the

month of August ended.  (*See* 2/5/24 Wagner Decl. ¶ 20.)  Because Promedev's July 1,

2022 notice contemplated an August 31, 2022 termination date consistent with paragraph

13 of the Agreement (*see* Termination Letter at 9), Promedev made its payments both

within 30 days of each invoice's date and prior to the Agreement's effective termination

date.  Defendants make no allegation that Promedev violated paragraph 13 by failing to

"promptly pay all sums owed."  (*See* Agreement ¶ 13.  *See generally* Def. Resp.)

Accordingly, Defendants raise no genuine dispute of material fact as to Promedev's

timely compliance with its payment obligations concerning MaXXiMedia's future

commissions.  The court therefore concludes as a matter of law that Promedev did not

breach the Agreement by paying MaXXiMedia's future commissions on August 29, 2022

and grants this portion of Promedev's motion.

> c.    *Payment for "Creative Services"*

Promedev argues that there is no genuine dispute that it did not breach the

Agreement by refusing to give in to MaXXiMedia's demand for $1,380,000 for "creative

services."  (Pl. Resp. at 10-15.)  Defendants counter that Promedev breached the

Agreement by "refus[ing] to pay for" such services.  (Def. Resp. at 1-2.)  The court

agrees with Promedev.

The Agreement unambiguously provides that "creative services" are part of the

"Services" MaXXiMedia performed in exchange for commission payments.  (*See*

Agreement ¶¶ 1, 4.)  Paragraph 4 provides that MaXXiMedia would charge Promedev

"for additional products and/or services as ordered by [Promedev] ***which are not part of***

***the Services covered by the terms of this Agreement***."  (*Id.* ¶ 4 (emphasis added).)

Paragraph 1, "Services," provides that MaXXiMedia's "services may include, but are not

limited to, research, market planning, public relations, web, digital, design and ***creative***

***services***." (*Id.* ¶ 1 (emphasis added).)  The fact that MaXXiMedia chose to bill Promedev

for these creative services only after Promedev gave its notice of intent to terminate

further confirms the parties' understanding that such services were baked into

MaXXiMedia's commission payments. (*See id.* ¶ 5 ("The Agency will invoice the Client

***at the time of services rendered***." (emphasis added)).)  The court therefore concludes as a

matter of law that Promedev did not breach the Agreement by refusing to pay

MaXXiMedia $1,380,000 for "creative services" and grants this portion of Promedev's

motion.

### d.     Payment for "Costs Incurred Under the Contract"

Promedev argues that there is no genuine dispute that it paid "all expenses[7] due

under the Agreement" and indeed "overpaid the legitimate amount[]" owed. (Pl. Resp. at

16.)  To support this argument, Promedev provides evidence that it paid over $100,000 to

MaXXiMedia to cover Mr. Wilson's miscellaneous expenses dating back more than four

years, even though he did not invoice Promedev for those expenses until two weeks after

Promedev provided its notice of intent to terminate. (*See* 2/5/24 Wagner Decl. ¶ 20;

Checks; 7/15/22 Invoices at MM009429.)  Defendants do not dispute Promedev's

contention that it overpaid the legitimate amounts owed to cover Mr. Wilson's expenses.

(*See generally* Def. Mot.; Def. Resp.; Def. Reply.)  Nor do Defendants argue or allege

---

[7] The parties use the terms "costs" and "expenses" interchangeably to refer to those sums
owed in addition to MaXXiMedia's "Services" under the Agreement. (*See* Agreement ¶ 4.)

1   that Promedev failed to "timely" pay Mr. Wilson's expenses.  (*See generally*

2   Counterclaims; Def. Mot.; Def. Resp.; Def. Reply.)  Instead, Defendants simply assert

3   that "Promedev refused to pay MaXXiMedia's costs incurred under the contract, which

4   Promedev agreed to pay after this lawsuit was filed." (Def. Resp. at 2.)  The court agrees

5   with Promedev that it did not breach the Agreement by failing to timely pay expenses.

6        The court already concluded that Promedev did not breach the Agreement by

7   failing to pay any sums owed before filing this lawsuit.  *See supra* §§ IV.A.1.a-b.  No

8   provision in the Agreement required Promedev to pay these sums before filing suit, and

9   Defendants do not argue that Promedev's September 1, 2022 payment toward Mr.

10  Wilson's expenses was untimely.  (*See generally* Agreement; Def. Resp.)  It is ironic,

11  however, that Defendants allege Promedev breached the Agreement by refusing to pay

12  "costs incurred **under the contract**" (Def. Resp. at 2 (emphasis added)), when tens of

13  thousands of dollars of Mr. Wilson's expenses evidently pre-dated the Agreement—some

14  by more than two years (*see* 2/5/24 Rainwater Decl. ¶ 13, Ex. FF (expense spreadsheet

15  including a $1,628.00 May 2018 expense for "Creative Planning" and a $37,800.00

16  expense dated "5/18/2018 to date" for "Traffic").)  The court therefore concludes as a

17  matter of law that Promedev did not breach the Agreement by "refusing" to pay any costs

18  owed to MaXXiMedia and grants this portion of Promedev's motion.

19            *e.    Continued Use of "Creative Product" Despite Failure to Pay
                     Monies Owed*
20

21       Promedev argues that there is no genuine dispute that its use of all "creative

22  product" was authorized because it "timely paid all amounts due under the Agreement"

1    and therefore possesses "full rights and ownership of any 'creative product.'" (Pl. Resp.

2    at 15, 17 (quoting Agreement ¶ 8).)  According to Defendants, however, the evidence

3    establishes that Promedev "chose to continue using MaXXimedia's creative work . . .

4    without paying what was owed up to and well after filing suit." (Def. Resp. at 13-14.)

5    Once again, the court agrees with Promedev.

6        The court already determined that Promedev paid all commissions and costs owed

7    under the Agreement.  *See supra* §§ IV.A.1.a-d.  And the court has concluded that

8    Promedev did not breach the Agreement by failing to pay any sums owed before filing

9    this lawsuit.  *See supra* §§ IV.A.1.a-b.  The Agreement unambiguously provides that,

10   "[u]pon payment in full to [MaXXiMedia], [Promedev] shall have full rights and

11   ownership of any 'creative product.'" (Agreement ¶ 8.)  The court concludes that

12   Promedev made "payment in full" under the Agreement no later than September 1, 2022,

13   the day Promedev made its final payment toward Mr. Wilson's miscellaneous expenses

14   and the first day after the effective date of the Agreement's termination.  Thus, Promedev

15   did not, as a matter of law, breach the Agreement by making unauthorized continued use

16   of creative product from July 1, 2022 onward.  The court therefore grants this portion of

17   Promedev's motion.

18            f.    *Continued Use of "Work Product" Despite Failure to Pay Monies*
                   *Owed*

19

20       Defendants' last two breach of contract allegations concern Promedev's use of

21   MaXXiMedia "work product"—specifically, the billing rates it negotiated on Promedev's

22   //

1    behalf with Fox News—through the remainder of 2022. (*See* Def. Resp. at 2.)[8]

2    Promedev argues that there is no genuine dispute of material fact that its use of the Fox

3    News rates through 2022 was authorized because "Maxximedia agreed Promedev could

4    do so." (Pl. Mot. at 25.) Defendants fail to respond to Promedev's argument, instead

5    asserting that "MaXXiMedia's negotiated rates saved Promedev millions.". (Def. Resp.

6    at 9 (capitalization altered).) The court agrees with Promedev that MaXXiMedia

7    authorized it to continue using the rates through 2022.

8         Promedev provides evidence that the parties "reached a deal" "to allow the

9    continued use of [the] Fox rates through the end of 2022." (Pl. Mot. at 25 (citing 2/8/24

10   Rainwater Decl. (Dkt. # 73) ¶ 14, Ex. M ("8/31/23 Emails")).) In particular, Promedev

11   provides an email from Defendants' attorney "[c]onfirming call has been made" to Fox

12   News to "make clear that we are using [MaXXiMedia's] rates through the end of the

13   year." (8/31/23 Emails at 1, 9.) Defendants do not respond to this argument in any of

14   their briefing or direct the court toward any evidence to the contrary. (*See generally* Def.

15   Resp.; Dkt.) Accordingly, the court concludes that there is no genuine dispute that

16   MaXXiMedia agreed to allow Promedev to continue using the Fox News rates through

17   the remainder of 2022; Promedev paid MaXXiMedia's commissions through that term

18   (2/5/24 Wagner Decl. ¶ 20), and MaXXiMedia agreed to let Promedev continue using the

19   rates (8/31/23 Emails at 1). The court therefore grants this portion of Promedev's

20   motion.

21

22        [8] The parties "agree that MaXXiMedia did not claim Promedev was contractually
     obligated, under the 2020 Agreement, to pay $2,000,000 for Work Product." (Def. Reply at 8.)

1

2

       *f.*    *Distribution of "Work Product" in Violation of Confidentiality Provision*

3

Finally, Promedev argues that there is no genuine dispute of material fact that it

4

did not breach the Agreement by disclosing the Fox News rates to non-party Eicoff

5

because "the Agreement's confidentiality clause was for Promedev's benefit." (Pl. Reply

6

at 12.) Defendants argue that the Agreement "clearly required . . . strict confidentiality

7

surrounding MaXXiMedia's Work Product," and that Promedev disregarded this

8

obligation. (Def. Resp. at 13.) The court agrees with Defendants that Promedev has not

9

demonstrated that it is entitled to summary judgment on this portion of their breach of

10

contract claim.

11

Paragraph 7 of the Agreement recognizes that "the Agency and Client will have

12

access to confidential information about the Agency's and Client's business" and

13

provides that "[t]he Agency and client agree to keep all such information strictly

14

confidential and not . . . disclose or divulge such information to any third party. This

15

includes all 'work product' in section 8 of this agreement which includes . . . all rate and

16

billing information." (Agreement ¶ 7.) Promedev argues that these provisions "were for

17

Promedev's benefit, not Maxximedia['s]." (Pl. Reply at 12.) In support of its argument,

18

Promedev cites paragraph 10 of the Agreement, "Remedies," which contemplates "the

19

Client's remedy at law for a breach . . . of Section[] 7." (*Id.* at 12-13 (quoting Agreement

20

¶ 10).) Section 10 does not, however, state that MaXXiMedia has no remedy for

21

Promedev's violation of paragraph 7. (*See* Agreement ¶ 10.) Promedev's argument is

22

also dubious in light of paragraph 7's requirement that "[t]he Agency ***and client*** agree to

1    keep all such information strictly confidential." (*Id.* ¶ 7 (emphasis added).)  Promedev's

2    interpretation would seemingly eliminate the requirement that it keep all "work product"

3    strictly confidential.  (*Id.*); *see also Grey*, 244 P.3d at 976.  There is no dispute that

4    Promedev disclosed the Fox News rates to Eicoff.  (*See* Pl. Resp. at 18 ("[T]he only rates

5    that Promedev shared with third parties were the rates that Fox charged to Promedev

6    . . . .").)  A jury must determine whether Promedev's disclosure of those rates to Eicoff

7    (and potentially other third parties) constituted a breach of contract.  The court therefore

8    denies this portion of Promedev's motion.

9            2.      Defendants' Motion

10          Defendants argue that there is no genuine dispute of material fact that

11   MaXXiMedia did not breach the Agreement because MaXXiMedia "was entitled to

12   payment for expenses and creative services."  (Def. Mot. at 11.)  Promedev argues that

13   the evidence "unequivocally" establishes that MaXXiMedia breached the Agreement by

14   "making improper demands for payments and threats if Promedev failed to pay such

15   demands" and "refusing to recognize" Promedev's ownership of creative product.  (Pl.

16   Resp. at 2.)  The court disagrees with Defendants for the reasons stated above, *see supra*

17   § IV.A.1.a-f (concluding that Promedev timely paid all sums due), but the court is also

18   skeptical of Promedev's claim.

19          Promedev fails to identify which provision(s) of the Agreement MaXXiMedia

20   allegedly breached.  (*See generally* Pl. Resp.)  A party does not breach a contract simply

21   by acting as a browbeater, and the uncontroverted evidence establishes that MaXXiMedia

22   did not remove Promedev's commercials from media outlets despite threatening to do so.

1   (*See* Agreement ¶ 6 (allowing MaXXiMedia to remove commercials in the event of an

2   overdue invoice); 1/18/24 Wilson Decl. ¶ 18 ("Although MaXXiMedia had authority to

3   pull the creative off air for nonpayment, I allowed it to continue to air on Promedev's

4   request . . . .").)

5          Federal Rule of Civil Procedure 56(f) provides that the court may, "[a]fter giving

6   notice and a reasonable time to respond," "grant the motion [for summary judgment] on

7   grounds not raised by a party." Fed. R. Civ. P. 56(f). The court exercises its discretion

8   under Rule 56(f) and orders Promedev to show cause why the court should not grant

9   summary judgment in Defendants' favor on its breach of contract claim for failure to

10  provide evidence sufficient for a reasonable factfinder to conclude that (1) Defendants

11  breached a duty under the Agreement, and (2) that breach proximately harmed to

12  Promedev. Failure to do so by 8:00 a.m. PDT on Monday, April 8, 2024 will result in

13  dismissal of Promedev's breach of contract claim with prejudice. Promedev's brief shall

14  not exceed 1,250 words.

15  **B.   Trade Secret Misappropriation**

16         The court next considers Defendants' claim for trade secret misappropriation.

17  Promedev argues that the court must grant it summary judgment on Defendants'

18  misappropriation claim because the rates MaXXiMedia negotiated on Promedev's behalf

19  with Fox News do not qualify as trade secrets. (Pl. Mot. at 17-20.) Defendants argue

20  that MaXXiMedia's rates "are built out of decades-long industry relationships" and hold

21  "competitive value." (Def. Resp. at 22 (capitalization altered).) Defendants further assert

22  that "MaXXiMedia required its clients," including Promedev, "to keep its work product

1    strictly confidential." (*Id.* at 23 (capitalization altered).)  Defendants do not, however,

2    present any evidence suggesting that Fox News had an obligation to keep the rates

3    confidential.  (*See generally id.*)  Summary judgment in Promedev's favor is therefore

4    warranted.

5           To have a valid claim for trade secret misappropriation under the DTSA or UTSA,

6    the complainant must first establish "the existence of a protectable trade secret."

7    *Traverse Therapy Servs., PLLC v. Sadler-Bridges Wellness Grp., PLLC*, No.

8    C23-1239MJP, 2024 WL 381180, at *3 (W.D. Wash. Feb. 1, 2024).  Trade secrets may

9    consist of "all forms and types of financial, business, scientific, technical, economic, or

10   engineering information."  18 U.S.C. § 1839(3); *see also* RCW 19.108.010(4) (providing

11   a similar definition).  The owner must, however, take "reasonable measures to keep such

12   information secret." *Id.* § 1839(3)(A); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S.

13   986, 1002 (1984) ("[T]he extent of the property right . . . is defined by the extent to which

14   the owner of the secret protects his interest from disclosure to others.").  Accordingly,

15   "[i]f an individual discloses his trade secret to others who are under no obligation to

16   protect the confidentiality of the information, . . . his property right is extinguished."

17   *Ruckelshaus*, 467 U.S. at 1002; *see also Woo v. Fireman's Fund Ins. Co.*, 154 P.3d 236,

18   241 (Wash. Ct. App. 2007) ("A[] requirement for trade secrets is that the holder must

19   make reasonable efforts to maintain the secrecy of the material.").

20          Here, the undisputed facts establish that the rates Fox News charged Promedev are

21   not a trade secret because Fox News was under "no obligation" to maintain their

22   confidentiality. *Ruckelshaus*, 467 U.S. at 1002.  (*See generally* 2/5/24 Wagner Decl.

¶ 23, Ex. S (Dkt. ## 65-19 (redacted), 68-3 (sealed)) ("Fox Agreement").)  The Fox

Agreement contains no confidentiality provisions and in no way obligates Fox News to

maintain the rates as confidential or to disclose them solely on a "need to know" basis.

(*See generally id.*)  Mr. Wilson even confirmed at deposition that he "d[oesn't] have an

agreement with Fox News that precludes them from disclosing [the] rates to anyone."

(2/5/24 Rainwater Decl. ¶ 7, Ex. Z  at 194:24-25; *see also id.* at 194:11-15 ("Q. So if Fox

News were to disclose to a third party the rates that it was charging MaXXiMedia, Fox

News would be misappropriating MaXXiMedia's trade secrets; is that your contention?

A. I don't have an agreement like that with Fox.").)  There is no evidence Defendants

took even the simplest measures to ensure that Fox News would keep the rates

confidential.  The court concludes as a matter of law that Defendants did not take

reasonable efforts to protect the billing rates Fox News charged Promedev.  As a result,

the rates are not a trade secret, and summary judgment in Promedev's favor is warranted.

## C.    Copyright Infringement

The court next considers Defendants' claim for copyright infringement.  A

copyright infringement claim comprises two elements:  "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The court's March 26,

2024 show cause order was directed toward the first element, which requires the claimant

to possess a valid copyright registration before filing its lawsuit.  (*See* 3/26/24 Order

(citing 17 U.S.C. § 411(a)).)  In response to the court's order, Defendants identified eight

copyrights they allege Promedev infringed (*see* OSC Rep. at 1-2).  Defendants maintain

1 │ that Promedev infringed these copyrights solely by airing advertisements on Fox News

2 │ between July 1, 2022 and August 28, 2022.  (*See generally* OSC Resp.)

3 │       Promedev argues that it is entitled to summary judgment on this claim for two key

4 │ reasons:  (1) "Promedev paid Maxximedia all amounts due under the parties' July 31,

5 │ 2020 Agreement"; and (2) "Maxximedia cannot claim infringement for the ads that aired

6 │ on Fox News from July 1, 2022 through August 31, 2022 because Maxximedia was

7 │ solely responsible for airing those ads."  (Pl. Mot. at 1.)  Defendants do not dispute that

8 │ MaXXiMedia placed the ads at issue.  (*See generally* Def. Resp.)  Instead, Defendants

9 │ assert that "[w]hether or not MaXXiMedia 'placed' the at-issue ads on Fox is a red

10 │ herring."  Defendants' argument is fishy, and summary judgment is warranted in

11 │ Promedev's favor.

12 │       As Promedev recognizes, Defendants' argument rests on the idea that Promedev

13 │ terminated the Agreement on July 1, 2022.  (Pl. Mot. at 8.)  Promedev, however, only

14 │ gave notice of termination on July 1, 2022, and that notice unequivocally provided for an

15 │ August 31, 2022 termination date, consistent with Section 13 of the Agreement.

16 │ (Termination Letter at 9 ("Pursuant to our phone call earlier today, this notice of

17 │ termination letter . . . is to confirm our election to terminate the Agreement on August 31,

18 │ 2022 pursuant to Section 13 of the Agreement."); Agreement ¶ 13 (providing that the

19 │ Agreement "may be terminated by either party on sixty (60) days written notice").)

20 │ MaXXiMedia knew this; Mr. Coleman's July 6, 2022 correspondence confirmed that

21 │ "the termination is not effective until August 31, 2022."  (7/6/22 Coleman Letter.)

22 │ Between July 1 and August 31, 2022, Defendants continued sending invoices, and

1    Promedev continued paying them until making its final payment the day after the

2    Agreement terminated.  (*See* 2/5/24 Wagner Decl. ¶ 20; Checks.)  Defendants' argument

3    therefore fails because it rests on a fallacy that Promedev could have infringed

4    MaXXiMedia's copyrights while the Agreement allowing it to air MaXXiMedia's

5    advertisements was still in effect.

6         Worse for Defendants, however, is Mr. Wilson's own declaration that

7    MaXXiMedia purchased the "television ad 'spots' for Relief Factor on Fox News" and

8    "allowed" those ads to "continue to air" after Promedev provided its notice of intent to

9    terminate.  (1/18/24 Wilson Decl. ¶¶ 6, 18.)  These facts render Defendants' copyright

10   infringement claim absurd.  As Promedev argues, Defendants are effectively arguing that

11   Promedev "is vicariously liable to Maxximedia for Maxximedia's infringement of

12   Maxximedia's copyrights."  (Pl. Mot. at 8.)

13        This is bad faith litigation.  Eight months ago, the court ordered Defendants "to

14   identify the creative product it claims are subject to copyright and/or contractual

15   protection."  (7/10/23 Minute Entry (Dkt. # 50).)  In response, Defendants supplemented

16   an interrogatory response and listed 132 different advertisements, identifying "[t]he

17   specific instances of infringement" as "[a]nytime the above-listed media aired between

18   July 1, 2022 and August 31, 2022."  (2/8/24 Rainwater Decl. ¶ 2, Ex. A (Defendants'

19   response to Interrogatory 22).)[9]  Defendants continued to argue that Promedev infringed

20   all of these advertisements despite the fact that they lacked registrations for 124 of them.

21

22        [9]  At least four of these advertisements were filmed before Promedev even hired
     MaXXiMedia in 2018.  (*See* 2/8/24 Wagner Decl. (Dkt. # 72) at 4.)

1   (*See* Def. Resp. at 8 (criticizing Promedev for "attempt[ing] to refute MaXXiMedia's

2   infringement claim . . . while ignoring well over a hundred advertisements created in

3   total").)  Because Defendants' counterclaims list only eight registration numbers (*see*

4   Counterclaims ¶ 52), Defendants' continued assertion of so many alleged copyrights

5   raised the court's eyebrow, and the court subsequently ordered MaXXiMedia to identify

6   the relevant copyright registrations it actually owned and the platforms on which

7   Promedev aired the allegedly infringing ads (*see* 3/26/24 Order at 2-3).  *See also* 17

8   U.S.C. § 411(a) (requiring a valid copyright registration before filing suit).  Defendants,

9   however, were only able to identify the same eight copyright registrations and only listed

10  ads that MaXXiMedia, not Promedev, placed on Fox News.  (*See generally* OSC Resp.)

11  Promedev admits that it aired four ads on Facebook and YouTube without

12  MaXXiMedia's assistance (*see* Pl. Mot. at 10), but MaXXiMedia never registered

13  copyrights for those advertisements (*see* OSC Resp.).  Nevertheless, Defendants

14  continued to litigate over them and hundreds more as if they held the valid copyright

15  registrations.  (*See* Def. Resp. at 19.)  The court finds that Defendants' sweeping

16  copyright infringement claim is improper, frivolous, and without evidentiary support.

17      The court is considering imposing sanctions against Defendants and their attorneys

18  for bringing and continuing to pursue this copyright infringement claim.  Pursuant to

19  Federal Rule of Civil Procedure 11(c)(3), the court orders Defendants and their attorneys

20  to show cause why sanctions should not issue for violations of Rule 11(b).  Defendants

21  and their attorneys must explain (1) the proper purpose behind their sweeping copyright

22  infringement claim, (2) why that claim was warranted by existing law or by a

1    nonfrivolous argument for extending, modifying, or reversing existing law, and (3) the

2    evidentiary support behind their factual contentions surrounding the breadth of their

3    copyright portfolio.  Should Defendants and their attorneys fail to show cause, the court

4    will impose sanctions "limited to what suffices to deter repetition of the conduct or

5    comparable conduct by others similar situated."  Fed. R. Civ. P. 11(c)(4).  Such sanctions

6    may include nonmonetary directives, including requiring Defendants' attorneys to attend

7    continuing legal education classes, and an order to pay a penalty into the court.

8    Defendants and their attorneys must submit a brief responding to this order by no later

9    than 8:00 a.m. on Monday, April 8, 2024, and their brief may not exceed 2,500 words.

10   **D.     Good Faith and Fair Dealing**

11          Next, the court considers the parties' motions as they pertain to alleged breaches

12   of the implied covenant of good faith and fair dealing.  Promedev alleges that, "[t]o the

13   extent the breaches" described in its breach of contract claim "do not constitute breaches

14   of the express terms of the Agreement, they are breaches of the implied covenant of good

15   faith and fair dealing."  (Am. Compl. ¶ 71.)  Defendants allege that Promedev breached

16   the covenant of good faith and fair dealing by operating "under the guise of a

17   partnership . . . to obtain trade secrets and convince MaXXiMedia to provide its credit

18   and reputational support to be placed on national TV" and "strategically executed the

19   discretionary termination clause with the intent to utilize the work product of

20   MaXXiMedia and secure continuous benefit from MaXXiMedia's exclusively negotiated

21   pricing and plans for ad placement with television networks."  (Counterclaims ¶ 35.)

22   Each side moves for summary judgment on the other's fair dealing claims.

1    In Washington, there is no "free-floating" duty of good faith and fair dealing.

2  *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 700 P.2d 338, 342 n.6 (Wash. Ct. App.

3  1985); *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004).

4  Instead, the implied duty of good faith and fair dealing "arises out of the obligations

5  created by a contract and only exists in relation to the performance of specific contract

6  terms." *Keystone*, 94 P.3d at 949; *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash.

7  1991).  A claim for breach of the implied duty exists "where the contract gives a party

8  discretion or leeway in determining how to act and that party exercises its discretion in a

9  manner inconsistent with the reasonable expectations of the parties or in some other

10  objectionable manner." *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1190

11  (W.D. Wash. 2013) (first citing *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d

12  748, 752 (8th Cir. 2006); and then citing *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp.

13  2d 1083, 1101 (W.D. Wash. 2011)).  Thus, to avoid summary judgment on a claim for

14  breach of the implied duty of good faith and fair dealing, a party must show a genuine

15  issue of material fact as to each of the following elements:  (1) the existence of a binding

16  contract; (2) a duty to act in good faith arose in relation to the performance of a specific

17  contract term; (3) the other side breached that duty; and (4) the breach caused the party to

18  suffer cognizable damages. *See, e.g., Microsoft Corp.*, 963 F. Supp. 2d at 1184-86

19  (discussing the elements of a claim for breach of the implied duty of good faith and fair

20  dealing).

21    Here, there is no dispute that both parties satisfy the first element of a claim for

22  breach of the duty of good faith and fair dealing because the Agreement is a binding

1   contract.  The court considers the remaining elements as they pertain to Promedev's and

2   Defendants' claims.

3        1.   Promedev's Claim

4        Promedev has provided evidence sufficient to establish a genuine dispute of

5   material fact as to the second element by identifying specific contract terms giving rise to

6   MaXXiMedia's duty to act in good faith.  Paragraph 1 requires MaXXiMedia to provide

7   services, including those "necessary to purchase and place all media for [Promedev]."

8   (Pl. Resp. at 17 (quoting Agreement ¶ 1).)  Paragraph 6 provides that MaXXiMedia "may

9   remove commercials" if an invoice is "not paid within thirty days or due date."  (*Id.*

10  (quoting Agreement ¶ 6).)  And paragraph 8 provides that Promedev "shall have full

11  rights and ownership of any 'creative product'" upon "payment in full."  (*Id.* (quoting

12  Agreement ¶ 8).)  Promedev argues that these terms obligated MaXXiMedia to allow

13  Promedev's existing inventory of advertisements to air on Fox News and other media

14  outlets through the term of the non-cancellable Fox ad buy—the remainder of 2022—

15  because Promedev never "failed to pay amounts legitimately due under the Agreement"

16  and eventually "paid all amounts due under the Agreement."  (*Id.*)  Given this evidence, a

17  reasonable jury could find that MaXXiMedia had a duty to act in good faith under the

18  Agreement by allowing Promedev's advertisements to air through 2022 without the threat

19  of repercussion.

20       Promedev has likewise provided sufficient evidence to establish a genuine dispute

21  of material fact as to the third element.  As a result of MaXXiMedia's conduct from July

22  2022 onward, including the threats it made, Promedev asserts that it was "forced to hire a

ORDER - 30

1  new production company on an expedited basis so that it would have new ads to air on

2  the non-cancellable Fox ad buy, which ran through 2022." (*Id.*)  Promedev argues that

3  MaXXiMedia breached its duty to act in good faith to provide services necessary to

4  purchase and place Promedev's advertisements by threatening to remove Promedev's

5  advertisements even though none of MaXXiMedia's invoices were overdue.  (*See id.*; *see*

6  *also, e.g.*, 2/5/24 Rainwater Decl. ¶ 12, Ex. EE at PROMEDEV 0016228 ("In order to

7  prevent Fox and Newsmaxx having no creative to air, wire your agreed upon obligation

8  . . . today."); 7/25/20 Email at PROMEDEV0016364 (threatening to "introduc[e] superior

9  competitors in the space coupled [with] negative social campaigns targeting Relief

10  Factor").)  Based on the evidence Promedev cites in its brief, a reasonable jury could

11  conclude that MaXXiMedia breached its duty to act in good faith.

12        Finally, Promedev satisfies the fourth element because a genuine dispute of

13  material fact exists concerning the measure of damages owed to Promedev for

14  MaXXiMedia's alleged breach.  As Promedev argues (and Defendants do not dispute), it

15  was "forced to hire a new production company on an expedited basis so that it would

16  have ads to air."  (Pl. Resp. at 17; *see* Def. Reply at 11 ("Promedev admits that it incurred

17  expenses because it was forced to secure creative services elsewhere during its dispute

18  with MaXXiMedia . . . .").  *See generally* Eicoff Email.)

19        Accordingly, a reasonable jury could conclude that MaXXiMedia had a duty to act

20  in good faith under the Agreement, breached that duty, and owes Promedev damages for

21  that breach.  The court therefore denies Defendants' motion for summary judgment on

22  Promedev's claim for breach of the implied covenant of good faith and fair dealing.

1          2.      Defendants' Claim

2          Defendants' claim for breach of the implied covenant of good faith and fair

3 dealing arises from the same conduct underlying the surviving portion of their breach of

4 contract claim—Promedev's disclosure of the Fox News rates.  (*See* Def. Resp. at 11

5 ("Promedev breached its duty of good faith and fair dealing by knowingly distributing

6 MaXXiMedia's confidential rate information to third parties without permission . . . .");

7 *id.* ("Promedev repeatedly disclosed MaXXiMedia's confidential rates to third parties

8 without permission and in violation of its contract with MaXXiMedia . . . .").)  If

9 disclosure of the rates was a breach of the Agreement's confidentiality provision,

10 however, then Promedev had no "discretion or leeway in determining how to act."

11 *Microsoft*, 963 F. Supp. 2d at 1190.  Accordingly, Promedev's disclosure of the rates

12 cannot be both a breach of contract and breach of the implied covenant of good faith and

13 fair dealing.  *Accord Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *7-8 (D.N.J.

14 Mar. 9, 2015) ("[T]he conduct alleged to be a breach of the implied covenant of good

15 faith and fair dealing must be distinct from the conduct alleged to constitute a breach of

16 contract.").  Because Promedev could not have exercised discretion it never possessed,

17 the court grants Promedev's motion for summary judgment on Defendants' claim for

18 breach of the implied covenant of good faith and fair dealing.

19 **E.      Civil Coercion, Extortion, and Blackmail**

20          Finally, the court considers Defendants' motion for summary judgment on

21 Promedev's claim for civil coercion, extortion, and blackmail.  Promedev alleges that

22 Defendants threatened that they would interfere with Promedev's business relationships,

disparage it in the marketplace, release unauthorized recordings, and "draw 'scrutiny and unwelcomed attention from various Government agencies'" if Promedev did not pay Defendants' demands for $1,380,000 for creative product, $2,000,000 for work product, and $5,000,000 for a non-compete and non-disparagement agreement.  (Am. Compl. ¶ 75.)  Defendants argue that this claim must be dismissed because no private cause of action exists under Washington law for coercion, extortion, or blackmail and, even if there were, Promedev was not financially harmed as a result of Defendants' payment demands.  (Def. Mot. at 14-17; Def. Reply at 7.)  The court concludes that Promedev does not have a cause of action for attempted extortion.

The Washington Supreme Court may have recognized a limited private right of action for extortion over a century ago in *Bertschinger v. Campbell*, 168 P. 977, 981-82 (Wash. 1917).  Noting that extortion is prohibited pursuant to "a general criminal statute," the Washington Supreme Court in *Bertschinger* nevertheless held that, because extortion "is a crime against the person and works to his personal injury[,] . . . the commission of it would create a cause of action in favor of the person so injured."  *Id.* at 981.  The Court therefore appears to have recognized a "right to ***recover*** money so extorted," *id.* at 982 (emphasis added), but it was silent with respect to a right to sue for *attempted* extortion where no money was paid to the defendant.[10]

*Bertschinger* sat dormant for nearly a century, during which time the Washington Court of Appeals, in an unpublished (and therefore nonprecedential) opinion that failed to

---

[10] Attempted extortion is, however, criminally punishable.  *See* RCW 9A.56.110.

1    cite *Bertschinger*, wrote that "there is no indication that there is a private right of action"

2    for extortion.  *Walker v. City of Kennewick*, No. 19610-1-III, 2001 WL 1434692, at *7

3    (Wash. Ct. App. Nov. 15, 2001).  In 2017, however, the Honorable Beth M. Andrus, then

4    serving on the King County Superior Court, held (again, in an unpublished decision) that

5    "*Bertschinger* remains good law" and "stands for the proposition that a person may sue

6    another to **recover** money extorted from him."  *N. Pac. Corp. v. Maliarov*, No.

7    16-2-11144-1SEA, 2017 Wash. Super. LEXIS 16211, at *2 (July 11, 2017) (emphasis

8    added).  The court concludes that, to the extent Washington recognizes a private right of

9    action for extortion, such right is limited to the recovery of funds that actually changed

10   hands.  In other words, there is no private right of action for attempted extortion in

11   Washington.

12        This court's interpretation of *Bertschinger* dooms Promedev's claim.  Promedev

13   alleges that Defendants attempted to extort it for millions of dollars (*see* Am. Compl.

14   ¶ 75), but there is no evidence Promedev paid any fraction of the $1,380,000 Defendants

15   demanded for creative product, $2,000,000  for the use of work product, or $5,000,000

16   for a non-compete and non-disparagement agreement (*see generally* Pl. Resp.).  Because

17   there is no money for Promedev to recover, the court GRANTS Defendants' motion for

18   summary judgment on Promedev's claim for civil coercion, extortion, and blackmail.

19                              **V.  CONCLUSION**

20        For the foregoing reasons, the court GRANTS in part and DENIES in part

21   Promedev's motion for summary judgment (Dkt. # 72) and GRANTS in part and

22

1  DENIES in part Defendants' motion for summary judgment (Dkt. # 56).  In particular,

2  the court rules as follows:

3    1.  Promedev's motion for summary judgment on Defendants' breach of contract

4        claim is GRANTED in part and DENIED in part.  Trial will proceed on whether

5        Promedev breached the Agreement by disclosing the Fox News billing rates that

6        MaXXiMedia negotiated on its behalf to third parties.

7    2.  Promedev's motion for summary judgment on Defendants' claims for breach of

8        the implied covenant of good faith and fair dealing, trade secret misappropriation,

9        and copyright infringement is GRANTED.  These claims are DISMISSED with

10       prejudice.

11   3.  Defendants' motion for summary judgment on Promedev's claims for breach of

12       contract and breach of the implied covenant of good faith and fair dealing is

13       DENIED at this time.  The court ORDERS Promedev to show cause why the court

14       should not grant Defendants summary judgment on its breach of contract claim by

15       **8:00 a.m. PDT on Monday, April 8, 2024.**

16   4.  Defendants' motion for summary judgment on Promedev's claim for civil

17       coercion, extortion, or blackmail is GRANTED.  This claim is DISMISSED with

18       prejudice.

19   5.  Defendants and their attorneys are ORDERED to show cause why the court should

20       not impose Rule 11 sanctions for bringing and maintaining a frivolous copyright

21       infringement claim by **8:00 a.m. PDT on Monday, April 8, 2024.**

22   //

Dated this 1st day of April, 2024.

_____
JAMES L. ROBART
United States District Judge

ORDER - 36